**In re Mark P. CASSIDY and Erin E. Cassidy, Debtors.**

**No. 06–21368.**

United States Bankruptcy Court, W.D. New York.

March 1, 2007.

---

George M. Reiber, Rochester, NY, Trustee.

## DECISION & ORDER

JOHN C. NINFO, II, Bankruptcy Judge.

### *BACKGROUND*

On July 31, 2006, Mark P. and Erin E. Cassidy (the "Debtors") filed a petition initiating a Chapter 13 case, and George M. Reiber, Esq. (the "Trustee") was appointed as their Chapter 13 Trustee.

On September 25, 2006, the Debtors filed an amended Chapter 13 Plan (the "Amended Plan") which provided, pursuant to Section 506(a)(1),[1] that the claim of General Motors Acceptance Corporation ("GMAC"), secured by a 2004 Chevrolet Trailblazer (the "Trailblazer"), was to be treated as an allowed secured claim in the amount of $17,300.00, representing what the Debtor alleged to be the retail value of the Trailblazer, with the balance of the amounts due GMAC in connection with the Debtor's May 21, 2004 purchase of the Trailblazer to be allowed as an unsecured claim.[2] The allowed secured claim of $17,300.00 was to be paid with interest, in equal monthly installments through the Plan.

The Debtors' Amended Plan did not explain the reasons why it proposed a "cram-down" or "bifurcation" treatment of the GMAC Secured Claim, pursuant to Section 506(a)(1), rather than a treatment pursu-

Kevin J. Bambury, Buffalo, NY, for Debtors.

1. Section 506 provides, in part, that:

    (a) (1) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

    11 U.S.C. § 506 (2006).

2. On August 7, 2006, GMAC filed a secured claim (the "GMAC Secured Claim") in the amount of $21,626.75.

ant to that portion of Section 1325(a)(9) that has become known as the "Hanging Paragraph," since the Trailblazer was purchased within 910 days of the date of the filing of the Debtor's petition. The Hanging Paragraph in Section 1325(a)(9) provides that:

> For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred with the 910–day [sic] preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor, or if collateral for that debt consists of any other thing of value, if the debt was incurred during the 1–year period preceding that filing.

On October 11, 2006, the Trustee filed a Motion (the "Valuation Motion") which requested that the Court, pursuant to Section 506(a)(1), determine that GMAC had an allowed secured claim for the $17,300.00, $400.00 more than the September 2006 NADA Guide retail value of the Trailblazer, and an unsecured claim for the balance of the GMAC Secured Claim. The Valuation Motion asserted that: (1) the Debtors purchased the Trailblazer on May 21, 2004 for their personal use from Jim Barnard Chevrolet ("Barnard Chevrolet"), which was within 910 days of the filing of their petition; (2) in connection with their purchase, they traded in a 2000 Chevrolet Cavalier (the "Cavalier"), which was valued at $7,554.00 on the Retail Installment Contract entered into by the parties [3]; (3) at the time they traded in the Cavalier, it was subject to a lien of $6,451.00; (4) the July 2004 NADA Guide indicated that the Cavalier had a trade-in value of between $3,550.00 and $3,925.00; (5) the Retail Installment Contract indicated that the cash price for the Trailblazer was $31,146.00, even though the October 2004 NADA Guide indicated that the manufacturer's suggested retail price for a new Trailblazer was $20,950.00; (6) the combination of the marked-up trade-in allowance for the Cavalier and the marked-up sale price for the Trailblazer indicated that the Debtors had substantial negative equity in the Cavalier that was refinanced as one of the transactions evidenced by the Retail Installment Contract so that the amount due could be paid and a lien release obtained; (7) although the Retail Installment Contract granted the holder a security interest in the Trailblazer for the entire amount financed, because the GMAC Secured Claim included rolled-in and refinanced debt, GMAC did not have a purchase money security interest for that portion of the debt, and, therefore, for all of the debt included in the GMAC Secured Claim, as specifically required by the Section 1325(a)(9) Hanging Paragraph; and (8) because GMAC had a purchase money security interest for only a portion and not all of the debt included in the GMAC Secured Claim, the exception set forth in the Section 1325(a)(9) Hanging Paragraph did not apply, and the GMAC Secured Claim was subject to the cram-down and bifurcation provisions of Section 506(a)(1).

On October 27, 2006, GMAC filed Opposition to the Valuation Motion.

The Trustee filed similar valuation motions in other Chapter 13 cases involving secured claims filed by a number of other motor vehicle financers (these creditors, along with GMAC, will be referred to collectively as the "Motor Vehicle Finance Group").[4]

---

**3.** The Retail Installment Contract was later assigned to GMAC.

**4.** The Trustee initially filed objections to confirmation in the cases where he believed that because of the roll-in and refinance of nega-

The Court conducted hearings on November 1, 2006 and November 15, 2006 at which time it heard the oral arguments of the Trustee and attorneys for a number of the Motor Vehicle Finance Group, including the attorneys for GMAC.

On December 22, 2006, the Court issued a Decision & Order in *In re Peaslee*, 358 B.R. 545 (Bkrtcy.W.D.N.Y.2006) (*"Peaslee"*). In *Peaslee*, a copy of which is attached,* the Court found that Section 506(a)(1), rather than the Section 1325(a)(9) Hanging Paragraph, governs the treatment of the secured claim of a motor vehicle financer, even though the debtor has purchased a replacement motor vehicle within 910 days of the filing of their petition for personal use, where: (1) it is shown that the secured claim includes amounts loaned to the debtor to pay off the debtor's negative equity in a trade-in vehicle, not to pay any part of the actual purchase price of the replacement vehicle, so that not all of the debt included in the secured claim is secured by a purchase money security interest; and (2) the Court, on all of the facts and circumstances presented in these refinancing of negative equity cases, in the exercise of its discretion, as specifically provided for by Section 9–103(h) of the New York Uniform Commercial Code, determined that a transformation rather than a dual status rule would be in the best interests of all of the parties and the Bankruptcy System.

On January 10, 2007, the Court issued a Decision & Order in *In re Jackson*, 358 B.R. 560 (Bkrtcy.W.D.N.Y.2007) (*"Jack-*

*son"*). In *Jackson*, a copy of which is attached,** the Court found that: (1) where the applicable retail installment contract did not itself indicate that negative equity had been refinanced, any interested party objecting to a motor vehicle financer's secured claim receiving treatment under that Section 1325(a)(9) Hanging Paragraph had the initial burden to demonstrate that the secured claim included debt that was not secured by a purchase money security interest; (2) the objecting party could utilize the appropriate NADA Guide value to meet their initial burden of proof as to the trade-in value of a trade-in vehicle, the retail value of a used replacement vehicle, or manufacturer's suggested retail price of a new replacement vehicle; (3) notwithstanding a determination by the Court that an interested party using NADA Guide values may have met their initial burden of proof to demonstrate the refinancing of negative equity, so that a motor vehicle financer's secured claim included debt that was not secured by a purchase money security interest, the motor vehicle financer always retained the right to demonstrate that in fact no negative equity in the trade-in vehicle was refinanced and to request a hearing for the Court to make that determination; and (4) in the event that the Court determined that the allowed secured claim of a motor vehicle financer was to be treated under Section 506(a)(1), the motor vehicle financer always retained the right to dispute any alleged retail value for the vehicle in question, and to request a hearing for the Court to determine the actual retail value.[5]

tive equity, the Section 1325(a)(9) Hanging Paragraph did not apply, even though the respective debtor's plan provided for treatment of the secured claim under the Section 1325(a)(9) Hanging Paragraph. It was at the Court's suggestion that the Trustee filed the valuation motions in order to insure that the respective members of the Motor Vehicle Finance Group received clear and detailed notice of the Trustee's position and so the mo-

tions could then be set down for consolidated oral arguments.

\* [Editor's Note: Attachment omitted by publisher for publication purposes.]

\*\* [Editor's Note: Attachment omitted by publisher for publication purposes.]

**5.** These findings, numbered (3) and (4), were primarily to address the Court's determinations in the ten other cases it had on reserve when *Peaslee* and *Jackson* were decided, in-

600

## DISCUSSION

In this case, this Court finds that the Trustee has met his initial burden of proof to demonstrate to the Court's satisfaction that the two separate financial transactions evidenced by the applicable Retail Installment Contract included the separate transaction where Barnard Chevrolet loaned the Debtors money to refinance the negative equity they had in the Cavalier for the following reasons:

1.  Barnard Chevrolet gave the Debtors a $7,554.00 allowance for the Cavalier, even though the NADA Guide trade-in value for the Cavalier was at most only $3,925.00;

2.  Even though the $7,554.00 allowance for the Cavalier may have been within the range of the values that resulted in the high end NADA Guide trade-in value of $3,925.00, although that seems unlikely, the Debtors paid more than $31,000.00 for the Trailblazer replacement vehicle that had a manufacturer's suggested retail price of approximately $20,950.00; and

3.  The overall price paid by the Debtors for the Trailblazer indicates that they in fact had significant negative equity in the Cavalier.

## CONCLUSION

Subject to the right of GMAC to request a hearing by March 12, 2007 on the issues of whether negative equity was refinanced or to determine the retail value of the Trailblazer, for the reasons set forth in *Peaslee*[6] and *Jackson,* pursuant to Section 506(a)(1), GMAC shall have an allowed secured claim of $17,300.00, reduced by any payments received in the Cassidy Case, to

be paid in equal monthly payments together with the applicable *Till* rate of interest, to be set forth in the Confirmation Order presented to the Court by the Trustee, and an unsecured claim for $4,327.00.

**IT IS SO ORDERED.**

cluding this case. *Jackson* also indicated that in the future these refinancing of negative equity cases would be addressed in connection with objections to confirmation when any response by a motor vehicle financer should

address whether it requests a hearing on negative equity or retail value.

**6.** The position and principal arguments asserted by GMAC were addressed in *Peaslee.*